IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JAMES HOLTON,

        Petitioner,

    v.

MARK NOOTH,

        Respondent.

Civil No. 08-1048-MO

OPINION AND ORDER

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his underlying state convictions for Rape and Assault. Because the only claim in the Amended Petition for Writ of Habeas Corpus (#44) is both untimely and procedurally defaulted, the Amended Petition is denied.

## BACKGROUND

In December of 2002, petitioner was convicted by a jury of assaulting and forcibly raping his girlfriend, Carmela Gudino. The convictions arose out of an incident where the victim met petitioner at a restaurant and ended their relationship. At petitioner's request, the couple returned to their apartment where he proceeded to assault and rape Gudino.

Petitioner testified in his own defense and admitted that he struck Gudino with a telephone, thereby justifying the Assault in the Fourth Degree charge, but he maintained that they engaged in consensual sex afterwards. Trial Transcript Vol. 4, p. 74. He admitted that Gudino told him to cease his sexual advances, but he testified that the two of them had a history of engaging in forceful consensual sexual intercourse while Gudino pretended to resist, and that such conduct typically followed an argument. *Id* at 47-48, 62.

2 - OPINION AND ORDER

The jury deliberated for approximately five and a half hours before convicting petitioner on both counts. As a result, on December 18, 2002, the trial court sentenced him to 100 months for Rape in the First Degree, and 60 days for Assault in the Fourth Degree. Respondent's Exhibit 101.

Shortly thereafter, juror S.B. wrote a letter to the court in which he stated that on the last day of deliberations as it drew near 5:00 p.m., the jury had still not reached a conclusion. According to S.B., "One juror would decide his fate ---- About 5:15 this female juror changed her decision based on picking up her children by 5:30. Others decided guilty so they wouldn't have to come back tomorrow." Respondent's Exhibit 133. S.B. felt that the jurors' decision was based on their personal responsibilities as well as their desire to not return for another day of service, not the facts of the case. *Id.*

Based upon this letter, counsel for petitioner filed a motion seeking a new trial. Respondent's Exhibit 127. The State opposed the Motion on the basis that it was untimely, and because Oregon law does not allow for a retrial even taking the contents of S.B.'s unsworn letter as true. Respondent's Exhibits 128-129. The trial court denied petitioner's Motion on February 6, 2003. Respondent's Exhibit 130.

Petitioner took a direct appeal in which appellate counsel raised two issues regarding mandatory minimum sentencing in Oregon,

3 - OPINION AND ORDER

but did not challenge the trial court's ruling on petitioner's Motion for New Trial. Respondent's Exhibit 112. After all of the direct appellate briefing had been filed by the parties, and more than a year after trial counsel filed his Motion for New Trial, another juror, J.F., wrote to petitioner's trial judge on April 30, 2004 complaining that two people on the jury were "loud, demanding. Basically made you feel you were stupid if you didn't see things the way they saw it. I would not have found him guilty because I think it was a game that they played a lot." Respondent's Exhibit 132. J.F. indicated that she felt "horribly guilt[y]" and hoped the trial judge could "fix" everything. *Id.* It does not appear from the record that this letter was considered during direct review. The Oregon Court of Appeals ultimately affirmed the trial court without opinion and the Oregon Supreme Court denied review. Respondent's Exhibits 115 & 116.

Petitioner next filed for post-conviction relief ("PCR") in Malheur County arguing, in part, that trial and appellate counsel were ineffective with respect to the jury misconduct issue. An investigator hired by petitioner's PCR attorney discovered that another juror from petitioner's criminal trial felt that the deliberation process was not proper. The investigator's report read, in relevant part, as follows:

> 11. [J.K.]: Contacted by phone, stated 2 people changed to guilty because of time factor. Jury talked about sentencing during breaks. [J.K.] threatened by old man

4 - OPINION AND ORDER

>           (did not know name) with his cane if he
>           did not change his vote. Felt it was not
>           a fair situation.

Respondent's Exhibit 180. The investigator's report, along with the correspondence from S.B. and J.F. was introduced at the PCR trial.

The PCR trial court denied relief on the Petition finding that the trial attorney "did everything he could to raise the issue regarding the jury deliberation" and that "[t]here's nothing to suggest that had he done something different . . . that would have resulted in a successful motion for new trial. . . ." Respondent's Exhibit 169, p. 13. It also determined that petitioner "has not proved the existence of any claims that appellate counsel failed to raise and that a competent counsel would have raised." Respondent's Exhibit 170, p. 3. The Oregon Court of Appeals summarily affirmed this decision, and the Oregon Supreme Court denied review. Respondent's Exhibits 174, 176.

Petitioner filed his federal Petition for Writ of Habeas Corpus on September 8, 2008, and amended that Petition on April 28, 2010. In his Amended Petition, petitioner raises a single ground for relief: whether petitioner was denied his Sixth Amendment right to an impartial jury and his Fourteenth Amendment right to due process as a result of prejudicial jury misconduct which included one juror's physical threat against another juror during the deliberations. Respondent asks the court to deny relief on the

5 - OPINION AND ORDER

Amended Petition because the single ground for relief argued in that pleading is untimely, procedurally defaulted, and lacks merit.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted on April 24, 1996. AEDPA provides that a one-year statute of limitations applies to federal habeas corpus actions filed by state prisoners. The one-year period runs from the latest of:

- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

- (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

- (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

- (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1).

The period of direct review also includes the 90-day period within which a petitioner can file a petition for writ of certiorari with the United States Supreme Court, whether or not he actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral

6 - OPINION AND ORDER

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner's direct appeal judgment issued on July 22, 2005, but AEDPA's statute of limitations did not begin to run until September 19, 2005, the final date on which he could have petitioned the U.S. Supreme Court for certiorari. AEDPA's limitation period was tolled on October 20, 2005 when it appears that petitioner first filed for PCR relief. Accordingly, 31 days elapsed between the conclusion of petitioner's direct review and the initiation of his state collateral review.

AEDPA's statute of limitations began to run again when the appellate judgment was entered in petitioner's PCR case on August 4, 2008. Respondent's Exhibit 177. Petitioner filed his federal Petition for Writ of Habeas Corpus on September 4, 2008. Although claims contained in the original Petition were clearly timely, AEDPA's statute of limitations continued to run as to any claims he had not yet asserted. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (an application for federal habeas corpus relief does not toll AEDPA's statute of limitations).

On April 28, 2010, petitioner filed an Amended Petition with the assistance of counsel which contains a single claim which was not part of the original Petition for Writ of habeas Corpus. According to the court's calculation, a total of 663 untolled days

7 - OPINION AND ORDER

elapsed between the conclusion of petitioner's direct appeal and the filing of the Amended Petition. As a result, the claim in the Amended Petition is timely only if it relates back to the original Petition.

An amended petition relates back to the filing of the original only if the claims "are tied to a common core of operative facts" which are similar in time and type to those contained in the original petition. *Mayle v. Felix*, 545 U.S. 644, 650, 664 (2005). In this case, petitioner's original Petition raised one claim of trial court error (based upon the sufficiency of the evidence), five claims of ineffective assistance of counsel, and three claims of ineffective assistance of appellate counsel. The due process claim petitioner raises in his Amended Petition is not based on the sufficiency of the evidence, but on the court's handling of the issue alleging juror misconduct.

While petitioner's original Petition faulted trial counsel for "failing to bring forward the jury misconduct in his motion for new trial," and blamed appellate counsel for "fail[ing] to present and argue the issue of juror misconduct," these claims are not of the same time and type of the claim currently before the court because the ineffective assistance of counsel claims from the original Petition involve different alleged errors by different actors. As such, petitioner's current claim does not relate back to his original Petition and is therefore untimely.

8 - OPINION AND ORDER

Even if the claim in the Amended Petition could be construed to relate back to the original Petition, that claim was not fairly presented to Oregon's state courts sufficient to preserve it for federal review.[1] Specifically, petitioner failed to present his claim to either the Oregon Court of Appeals or the Oregon Supreme Court during direct review. Respondent's Exhibits 112, 114. Because he may longer present the claim in his Amended Petition to Oregon's state courts, it is procedurally defaulted.

Because the claim in petitioner's Amended Petition is both untimely and procedurally defaulted, petitioner is not entitled to habeas corpus relief.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#44) is DENIED. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 8 day of September, 2010.

Michael W. Mosman
United States District Judge

---

[1] A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

9 - OPINION AND ORDER